IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDAL LANEY,

      Plaintiff,                    No. 2:10-cv-0593 CKD P

      vs.

L. WOLCOTT,

      Defendant.                 <u>ORDER</u>

_____/

I. <u>Introduction</u>

      Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the First Amended Complaint filed July 19, 2010, specifically the claim that defendant Wolcott used excessive force against plaintiff in violation of the Eighth Amendment. (Dkt. Nos. 14, 15.) The parties have consented to this court's jurisdiction. (Dkt. Nos. 8, 21.) Pending before the court is defendant's November 21, 2011 motion for summary judgment. (Dkt. No. 36.) On January 30, 2012, plaintiff filed an opposition, and on February 2, 2012, defendant filed a reply. (Dkt. Nos. 40, 41.) For the following reasons, the court will grant defendant's motion.

////

////

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

\\\\\

On December 13, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 17.) See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Discussion

A. Legal Standard

Plaintiff alleges that defendant Wolcott used excessive force against him in the course of escorting him to a gym at High Desert State Prison (HDSP) in order to house him there, in July 2008. (Dkt. No. 14 (FAC) at 4-6.)[1]

The Eighth Amendment prohibits cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitely v. Albers, 475 U.S. 312, 319 (1986). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, ––– U.S. –––, –––, 130 S.Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9, (1992)) (internal quotations omitted).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. As the Supreme Court explained in Wilkins:

> The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' . . . This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. '[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation.' The extent of injury may also provide some indication of the amount of force applied.

---

[1] Citations refer to page numbers assigned by the court's docketing system.

> . . .
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. Accordingly, the Court concluded in Hudson that the supposedly 'minor' nature of the injuries 'provide[d] no basis for dismissal of [Hudson's] § 1983 claim' because 'the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not de minimis for Eighth Amendment purposes.' 503 U.S. at 10.

130 S.Ct. at 1178-1179 (some internal citations omitted).

B.  Factual Background

Having reviewed the record, the court determines that the following facts are undisputed:

On July 7, 2008, Laney was incarcerated at HDSP, where he was serving a 12-year prison term for a 2005 conviction for assault with a firearm. (Defendant's Statement of Undisputed Facts (DUF) 1; Laney Dep. 14:7-10; see Dkt. No. 37.) That afternoon, he was released from the administrative segregation unit and taken to the Program Office on Facility A. (DUF 2.) Prior to that day, Laney and Wolcott had never conversed or interacted, and there was no animosity between them. (Laney Dep. 21:4-25.) Wolcott, the Facility A Sergeant, spoke to Laney in the Program Office about institutional plans to house him in the gym. Laney told Wolcott that he did not want to be housed in the gym due to the large number of inmates confined in a small space and the conditions that created. (FAC at 4; Laney Dep. 29-33; Dkt. No. 36-2 (Wolcott Decl.) ¶¶ 3-4.) Wolcott informed Laney that he was eligible to be housed in the gym, and that's where he was going. (Laney Dep. 34:8-12; Wolcott Decl. ¶ 4.)

Wolcott and non-defendant Officer Anderson began escorting Laney to the Facility A gym. (DUF 5.) Laney was carrying a bedroll and not handcuffed. (DUF 6; Laney Dep. 34-35.) When the escort was four or five feet from the gym entrance, Laney came to an abrupt stop and said, "I don't do gyms." (DUF 8; Laney Dep. 39:16-23.) He put his bedroll

5

1  down. (Laney Dep. 40:12-24.) According to plaintiff, Wolcott responded: "Gyms do you, so
2  that's where you're going." (Laney Dep. 39:5-11.) At that time, Wolcott was on Laney's left
3  side and Anderson was on his right. (Laney Dep. 41:4-8.) Each of them took hold of one of
4  Laney's upper arms and attempted to move him toward the gym. (DUF 17; Laney Dep. 42:14-
5  17.) According to plaintiff, Wolcott said: "Laney, you're going in the gym one way or another."
6  (Id., 42:18-20.) Laney raised his arms above his head and said, "Stop pushing me. I'm not going
7  in the gym." (Laney Dep. 43-44; 45:13-23.)  It is undisputed that defendant was not shoving or
8  yanking plaintiff, but applying force in an attempt to move him toward the gym door. (DUF 12;
9  Laney Dep. 42:10-17.)

10           At this point, the parties' stories diverge. Laney contends that Wolcott said, "He's
11  refusing," and Anderson told Laney to "get down." Laney states that, as he was slowly
12  attempting to lower himself to the ground, he was "slammed to the ground [by] Wolcott." He
13  also describes this as being "yanked from the left side" – where Wolcott was – and "thrown to
14  the ground." (Laney Dep. 46-47.) He states that Wolcott additionally used his foot to sweep
15  Laney's left leg out from under him, such that Laney was "spinned around" and fell backwards
16  onto his right side. (Laney Dep. 51-53.) Laney states that, next, it felt like someone "landed on
17  [his] back." While Wolcott maintained control of Laney's left arm, someone – presumably
18  Anderson – applied handcuffs. (Id., 53-54.) Laney alleges that Wolcott's actions caused
19  "abrasions to [his] chin." He also alleges "injuries to his legs as a direct result of [Wolcott's]
20  unnecessary use of excessive force." (FAC at 4.)

21           Wolcott contends as follows:

22  > Laney repeated that he was not going to live in the gym. I gave
23  > Laney a direct order to go into the gym, and he refused to comply.
    > Anderson and I attempted to assist Laney into the gym by taking
24  > hold of his arms and applying a forward motion. Laney took a step
    > or two back and suddenly jerked his arms out of our grasp by
25  > raising them above his head and twisting his body. I perceived
    > Laney's actions as a threat because he was not handcuffed and he
26  > was refusing to comply with a direct order. I immediately reached
    > for and grabbed Laney's left arm and placed his arm behind his

> back. Anderson took control of Laney's right side. We gave him an order to get down on the ground.
>
> I used Laney's and my momentum to guide him to the ground and to maintain control of him while Anderson applied the handcuffs. I had a hold of Laney's arm during the entire process. I did not throw him to the ground, nor did I drop my knee on his back. Based on my customary practice, I placed my knee on Laney's back while Anderson handcuffed him. This procedure prevents an inmate from resisting and allows the officer to maintain greater control of an inmate while applying the handcuffs. The entire incident lasted a matter of seconds.

(Wolcott Decl. ¶¶ 8-15.)

Wolcott and Anderson lifted Laney off the ground and escorted him back to the Program Office, where he was placed in a holding cell. (DUF 20; see Crime/Incident Report, attached to Esquivel Decl., Ex. B.) Within ten minutes of being placed in the holding cell, medical staff examined Laney and noted that he had an abrasion on his chin and right-knee area. (DUF 21; see Medical Report of Injury or Unusual Occurrence, attached to Esquivel Decl., Ex. B. at 15.)

C. Analysis

Defendant moves for summary judgment on the grounds that his use of force was de minimis and proportional to plaintiff's refusal to comply with instructions. The court agrees. Even construing the facts in the light most favorable to plaintiff, plaintiff's admitted refusal – both verbal and physical – to continue moving toward the gym in violation of a direct order, coupled with his lack of handcuff restraints, reasonably caused defendant and Anderson to take physical control of plaintiff at that time. The court will not second-guess defendant's method of lowering plaintiff to the ground and securing him so that Anderson could place him in handcuffs. While this perhaps could have been done more gently, plaintiff's resulting injuries – scrapes to his chin and knee – were minimal. Nothing in the record suggests that defendant harbored animosity toward plaintiff or was "maliciously and sadistically" seeking to cause him harm. Rather, the record indicates that defendant's use of force "was applied in a good-faith effort to

maintain or restore discipline." Wilkins, 130 S.Ct. at 1178.  Thus the court finds no genuine dispute of fact as to this issue.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED THAT defendant's November 21, 2011 motion for summary judgment (Dkt. No. 36) is granted, and this case is closed.

Dated: June 18, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
lane0593.sj